UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON

| | |
|---|---|
| KELLY L. WORSHAM, ) | |
| ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | NO. 5:22-CV-00150-MAS |
| ) | |
| KILOLO KIJAKAZI, ) | |
| ) | |
| Defendant. ) | |
| ) | |
| ) | |

**MEMORANDUM OPINION & ORDER**

Kelly L. Worsham ("Worsham") appeals the Commissioner's denial of her applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") benefits under Titles II and XVI of the Social Security Act. The Court addresses the parties' competing summary judgment motions. [DE 13, 15]. Worsham filed a reply, [DE 16], so this matter is fully ripe for review.

### I.  FACTUAL AND PROCEDURAL HISTORY

Worsham filed DIB and SSI applications on December 17, 2018, alleging disability beginning on June 29, 2017. [Administrative Transcript ("TR") at 206–15]. She alleges disability due to chronic obstructive pulmonary disease, sleep apnea, fibromyalgia, and rheumatoid arthritis. [TR at 15, 63, 230]. Worsham's claim was denied initially on April 24, 2019, and denied upon reconsideration on November 1,

1

2019. [TR at 85–86, 125–26]. ALJ Karen R. Jackson conducted a hearing on July 7, 2020, and an impartial Vocational Expert ("VE") appeared and testified.

Worsham was 54 years old at the alleged onset date. She attended school through the twelfth grade. [TR at 34]. Prior to her alleged disability, she held an array of jobs: she was self-employed part-time as a lawnmower, a cashier at a grocery chain, a Certified Nursing Assistant ("CNA"), an assistant manager, and a cook at different times in her adulthood. [TR at 35–40]. During the hearing, she testified that her major challenges were standing and lifting due to persistent back pain. [TR at 40–42]. She further testified to hip pain, trouble breathing, and difficulty walking without getting overheated. [TR at 42]. Other problems she reported related to pain and swelling in her feet that prevents her from wearing normal shoes, which is only aided by wearing compression boots. [TR at 43–52].

During the ALJ's questioning of the VE, the VE testified that Worsham's past work required light or medium exertion. [TR at 55]. The ALJ then asked the VE to assume an RFC of an individual,

> limited to lifting or carrying, pushing or pulling 20 pounds occasionally or 10 frequently; standing and/or walking about 6 hours in an 8-hour workday or sitting about 6 hours in an 8-hour workday; occasionally climbing ramps or stairs; never climbing ladders, rope or scaffolds. Occasional balancing; occasional stopping, kneeling, crouching, or crawling; should avoid concentrated exposure to temperature extremes, humidity, vibration, fumes, odors, dust, gases, or poor ventilation, and all exposure to hazards such as unprotected heights or dangerous machinery.

[TR at 56]. The VE testified that such an individual could perform Worsham's past work as a cashier. [TR at 57]. When asked to limit the hypothetical RFC to light work, the VE testified that an individual could perform light jobs, such as a small

parts assembler, electronics worker, and inspector/hand packager. [TR at 57]. Finally, the ALJ asked the VE to assume an RFC with certain mental limitations that would limit the individual to "simple, routine work tasks; . . . maintain[ing] attention and concentration for simple tasks for 2-hour segments during an 8-hour workday[,] . . . adapt[ing] to gradual changes in routine work environment; and . . . interact[ing] frequently with supervisors and coworkers and occasionally with the general public." [TR at 57–58]. The VE responded that the additional mental limitations would eliminate past work, and that Worsham did not obtain skills in her past work that would be transferable to a sedentary position. [TR at 58].

Ultimately, however, ALJ Jackson determined that Worsham was not disabled and that she has the following RFC:

> [C]laimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except she can only occasionally climb ramps or stairs and never ladders, ropes or scaffolds; occasionally balance; occasionally stoop, kneel, crouch, or crawl; and should avoid concentrated exposure to temperature extremes, humidity, vibration, fumes, odors, dust, gases and poor ventilation, and all exposure to hazards such as unprotected heights or dangerous machinery.

[TR at 20].

## II. LEGAL FRAMEWORK

Judicial review of the ALJ's decision is deferential and strictly limited. The Court's sole task is to determine whether the ALJ applied the correct legal standards and whether the ALJ's factual findings are supported by substantial evidence in the record. *See Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 405 (6th Cir. 2009); *Jordan v. Comm'r of Soc. Sec.*, 548 F.3d 417, 422 (6th Cir. 2008); *see also*

42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive[.]"). Substantial evidence is "more than a scintilla of evidence, but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994). "The substantial-evidence standard allows considerable latitude to administrative decision makers" and "presupposes that there is a zone of choice within which the decisionmakers can go either way, without interference by the courts." *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (quoting *Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir. 1984)).

The Court must make its substantial evidence determination based on the record as a whole. *Cutlip*, 25 F.3d at 286. However, the Court need not comb the entire record in search for facts supporting under-developed arguments. [*See* General Order No. 13-7 (citing *Hollon ex rel. Hollon v. Comm'r of Soc. Sec.*, 447 F.3d 477, 491 (6th Cir. 2006)) ("The parties shall provide the Court with specific page citations to the administrative record to support their arguments. The Court will not undertake an open-ended review of the entirety of the administrative record to find support for the parties' arguments.")]. Further, the Court may not "try the case *de novo*, resolve conflicts in evidence, or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007). The Court must affirm the ALJ's decision if there is substantial evidence in the record to support it, even if substantial evidence might also support the opposite conclusion. *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387,

4

393 (6th Cir. 2004); *Mullen*, 800 F.2d at 545. Likewise, the Court must affirm any ALJ decision supported by substantial evidence, even if the Court itself might have reached a different original result. *See Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005); *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389–90 (6th Cir. 1999).

For context, the Court briefly outlines the ALJ's five-step sequential analysis. *See Preslar v. Sec'y of Health & Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994); 20 C.F.R. § 416.920(a)(4). In the first step, the ALJ decides whether the claimant is performing substantial gainful activity. 20 C.F.R. § 416.920(a)(4)(i). In the second step, the ALJ determines whether the claimant suffers from any severe impairments. *Id.* at § 416.920(a)(4)(ii). In the third step, the ALJ decides whether such impairments, either individually or collectively, meet an entry in the Listing of Impairments. *Id.* at § 416.920(a)(4)(iii). In the fourth step, the ALJ determines the claimant's RFC and assesses whether the claimant can perform past relevant work. *Id.* at § 416.920(a)(4)(iv). Finally, in the fifth step, the burden shifts to the Commissioner. The ALJ must consider and decide whether there are jobs that exist in significant numbers in the national economy that the claimant could perform based on RFC, age, education, and work experience. *Id.* at § 416.920(a)(4)(v). If the ALJ determines at any step that the claimant is not disabled, the analysis ends there. *Id.* at § 416.920(a)(4).

ALJ Jackson issued an unfavorable decision on January 12, 2021. [TR at 12]. The Appeals Council denied Worsham's request for review on April 6, 2022. [TR at 5]. Worsham timely filed this appeal on June 10, 2022. [DE 1].

## III. ANALYSIS

Worsham asserts that reversal and remand are necessary on three independent grounds. First, she argues that ALJ Jackson "failed to adequately evaluate and sufficiently explain" her rejection of the restrictions prescribed by consultative evaluator Dr. James C. Owen in violation of 20 C.F.R. §§ 404.1520c(a)–(b) and 416.920c(a)–(b). Second, she argues that the ALJ's decision failed to explain why mental restrictions were omitted from the RFC analysis, despite mental restrictions included in consultant Dr. Christi Hundley's psychological report and the VE's testimony based on those restrictions that past work would be eliminated. Third, Worsham argues that ALJ Jackson violated 20 C.F.R. §§ 404.1529 and 416.929 when her decision rejected Worsham's subjective statements regarding pain and swelling in her lower extremities without properly analyzing the medical evidence submitted at the hearing level. [DE 13-1, PageID# 737]. The Court shall address each contention below.

**A. ALJ FAILED TO ADEQUATELY ANALYZE RESTRICTIONS ASSESSED BY DR. JAMES C. OWEN IN VIOLATION OF 20 C.F.R. §§ 404.1520C(A)–(B) AND 416.920C(A)–(B).**

First, Worsham contends that ALJ Jackson failed to follow certain social security regulations—20 C.F.R. §§ 404.1520c(a)–(b), 416.920c(a)–(b)[1]—when

---

[1] The language in each regulation is identical, applying to DIB and SSI claims respectively.

**6**

evaluating she did not fully explain why she rejected the restrictions proposed by Dr. Owen, which resulted in an RFC unsupported by substantial evidence. [DE 13-1, PageID# 746]. ALJ Jackson stated the following in her decision:

> James Owen, M.D. examined the claimant in March of 2019. He noted that the claimant's lungs were clear without rales, rhonchi, or wheezes. Chest x-ray showed no acute disease. Strength, sensation, and coordination were all intact, and heel and toe walk was at 5/5. She had limited range of motion in the lumbar spine but had a normal gait and station, and got on and off the table and in and out of the room without significant difficulty. Pulmonary function testing found an FVC at 70% of predicted values after bronchodilator and an FEV-1 at 76%. Dr. Owen diagnosed mild to moderate COPD; history of fibromyalgia; low back pain with no evidence of radiculopathy; sleep apnea under good control; and pain in the hands with slight redness, possible rheumatoid arthritis. Dr. Owen stated that the claimant would have moderate to severe difficulty lifting, handling, or carrying objects, and that her estimate of lifting less than ten pounds, walking ten minutes, standing ten minutes, and sitting for an hour was appropriate (Exhibit 3F). This opinion is not persuasive, as it is not consistent with or supported by the medical evidence of record, including Dr. Owen's own findings on examination.

[TR at 21–22].

For claims filed March 27, 2017, or later, the agency does not "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's own] medical sources." 20 C.F.R. § 404.1520c(a).[2] Instead, the Commissioner "will articulate in [its] determination or decision how persuasive [it] find[s] *all of the*

---

[2] Social security regulations define medical opinions as statements "from a medical source about what [the claimant] can still do despite [his or her] impairment(s)[.]" 20 C.F.R. § 404.1513(a)(2). Medical opinions also include a medical source's statements about a claimant's ability to (1) "perform physical demands of work activities, such as sitting, standing, walking, lifting, carrying, pushing, pulling, or other physical functions"; (2) "perform mental demands of work activities, such as understanding; remembering; maintaining concentration, persistence, or pace; carrying out instructions; or responding appropriately to supervision, co-workers, or work pressures in a work setting;" (3) "perform other demands of work, such as seeing, hearing, or using other senses;" and (4) "adapt to environmental conditions, such as temperature extremes or fumes." *Id.* at (i)–(iv).

7

*medical opinions* and all of the prior administrative medical findings in [the claimant's] record." 20 C.F.R. §§ 404.1520c(b); 416.920c(b) (emphasis added).

The new regulations provide that "administrative law judges will now evaluate the 'persuasiveness' of medical opinions by utilizing the five factors listed in paragraphs (c)(1) through (c)(5) of the regulation." *Jones v. Comm'r of Soc. Sec.*, No. 3:19-CV-01102, 2020 U.S. Dist. LEXIS 62143, 2020 WL 1703735, at *2 (N.D. Ohio Apr. 8, 2020) (quoting *Gower v. Saul*, 2020 U.S. Dist. LEXIS 39826, 2020 WL 1151069, at * 4 (W.D. Ky, March 9, 2020) (citing 20 C.F.R. § 404.1520c(a) and (b)); see also *Ryan L. F. v. Comm'r of Soc. Sec.*, No. 6:18-CV-01958-BR, 2019 U.S. Dist. LEXIS 207152, 2019 WL 6468560, at *4 (D. Or. Dec. 2, 2019) ("Although the regulations eliminate the 'physician hierarchy,' deference to specific medical opinions, and assigning 'weight' to a medical opinion, the ALJ must still 'articulate how [he/she] considered the medical opinions' and 'how persuasive [he/she] find[s] all of the medical opinions.'") (citing 20 C.F.R. §§ 404.1520c(a), (b) (1), 416.920c(a) and (b) (1)) (alterations in original)).

The five factors to be evaluated are supportability, consistency, relationship with the claimant, specialization, and other factors, but supportability and consistency are acknowledged to be the most important factors for consideration. 20 C.F.R. § 416.920c(c)(1)–(5); 20 C.F.R. § 416.920c(b)(2). The regulations define "supportability" as follows: "The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the

8

medical opinions or prior administrative medical finding(s) will be." 20 C.F.R. § 416.920c(c)(1). The regulations define "consistency" as follows: "The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." 20 C.F.R. § 416.920c(c)(2).

Here, Worsham opines that ALJ Jackson did not properly weigh the consistency or supportability factors when she determined Dr. Owen's opinion (and accompanying restrictions) were not persuasive. Upon review, this Court disagrees. ALJ Jackson discussed Dr. Owen's findings, including that "claimant's lungs were clear without rales, rhonchi, or wheezes"; "[c]hest x-ray showed no acute disease"; "[s]he had limited range of motion in the lumbar spine but had a normal gait and station"; and "[s]trength, sensation, and coordination were all intact, and heel and toe walk was at 5/5." [TR at 21]. Further, Dr. Owen diagnosed Worsham with mild-to-moderate COPD; "low back pain with no evidence of radiculopathy"; "under control" sleep apnea; and "possible rheumatoid arthritis." [TR at 21]. Despite these notes and diagnoses, Dr. Owen proceeded to prescribe restrictions based on his opinion that "claimant would have moderate to severe difficulty lifting, handling, or carrying objects[.]" [TR at 21]. So, the ALJ's finding that Dr. Owen's opinion is not supported by his objective observations suffices to discuss the consistency factor.

As to the supportability factor, the ALJ likewise did not err when she determined Dr. Owen's opinion was not supported by the medical evidence of record.

9

In the paragraph preceding her conclusion that Dr. Owen's opinion was not persuasive, the ALJ highlighted other medical evidence in the record that was not fully compatible with Dr. Owen's restrictions, including a December 2017 x-ray that "identified degenerative changes in the hips and minimal degenerative changes in the lower lumbar spine"; a CT scan in February 2018 that "showed centrilobular emphysema but was described as a negative scan with no airspace disease"; that her COPD was controlled with a Breo and rescue inhaler; and that pulmonary function testing showed no obstruction. [TR at 21].

Based on the foregoing, this Court finds that ALJ Jackson adequately built a "logical bridge" between the medical evidence and the record and Dr. Owen's contradictory conclusion. *Terhune v. Kijakazi*, No. 3:21-CV-37-KKC, 2022 U.S. Dist. LEXIS 130309, 2022 WL 2910002, at *3 (E.D. Ky. July 22, 2022). The analysis stops there, as the Court cannot reweigh the evidence and make new credibility determinations. *Young v. Kilolo Kijakazi*, No. 22-273-DLB, 2023 U.S. Dist. LEXIS 109222, at *14 (E.D. Ky. June 26, 2023) (collecting cases); *see also Nasser v. Comm'r of Soc. Sec.*, No. 22-1293, at *2, 2022 U.S. App. LEXIS 33278, 2022 WL 17348838 (6th Cir. Dec. 1, 2022) (writing that a plaintiff's attempt to argue an incorrect application of supportability and consistency is nothing more than a "veiled attempt to have [the court] reweigh the evidence") (citing *Kidd v. Comm'r of Soc. Sec.*, 283 F. App'x 336, 341-43 (6th Cir. 2008)). Thus, the Court finds that the ALJ did not err with respect to her treatment of Dr. Owen's medical opinion.

B.  **ALJ FAILED TO EXPLAIN WHY MENTAL RESTRICTIONS WERE EXCLUDED FROM WORSHAM RFC ANALYSIS**

Next, Worsham contends that ALJ Jackson erred by failing to explain why the RFC did not include mental restrictions, even though the ALJ stated that Worsham has "no more than a mild psychological limitation[]." [DE 13-1, PageID# 748; TR at 22]. Social security regulations provide that RFC should include all medically determinable impairments, mental and physical. § 404.1545(b)–(c). The assessment of a claimants RFC even includes impairments that are not classified as "severe." *Id.* at (a)(2); *Kohne v. Kijakazi*, Civil Action No. 2: 23-037-DCR, 2023 U.S. Dist. LEXIS 142376, at *11 (E.D. Ky. Aug. 14, 2023) ("The ALJ is required to consider the effects of both severe and non-severe impairments in determining the RFC and must analyze a claimant's 'mild' restrictions in determining the RFC." (citing *Richardson v. Saul*, 511 F. Supp. 3d 791, 799 (E.D. Ky. 2021)). Importantly, an assessment of whether a claimant has a severe mental impairment under these criteria is "not intended to supplant an RFC determination." *Kohne*, 2023 U.S. Dist. LEXIS 142376, at *11 (citing *Richardson*, 511 F. Supp. 3d at 799). So, an ALJ is still obliged to consider the alleged mental impairments at in the RFC analysis. *Richardson*, 511 F. Supp. 3d at 799 (citing SSR 96-8p, 1996 SSR LEXIS 5, 1996 WL 374184 at *4).

ALJ Jackson discussed Worsham's alleged mental impairments at two points in her decision. First, at step-two of her analysis, the ALJ determined that Worsham only had a mild limitation in each of the four areas of mental functioning criteria set forth in the regulations. [TR at 18–19]. Later in her decision, ALJ Jackson revisited Worsham's alleged mental impairments when referencing the opinion of Dr. Cristi

11

Hundley, who diagnosed Worsham with major depressive disorder and stated that Worsham had "fair to good ability to understand and remember simple instructions; fair to good ability to maintain attention and concentration; fair ability to interact appropriately in a work setting; and fair ability to handle the stresses typically associated with a work environment given her presentation, but moderate to marked limitation when her depressive symptoms are not managed[.]" [TR at 22].

So, after finding a "moderate to marked" limitation in one of the four areas of mental functioning, ALJ Jackson was required to assess how the limitation—although non-severe—would impact Worsham's ability to work. This Court finds that the ALJ Jackson did so when she noted that three other consultant doctors—Drs. Christi Bruening, Ronald Machado, and J. Biddison—reviewed Worsham's medical records and "found that she would be able to perform a range of light work with no severe psychological impairment." [TR at 22]. The ALJ concluded that their opinions were persuasive and consistent with medical records, which suffices to provide an adequate explanation for why Worsham's RFC did not include any mental limitations. Thus, ALJ Jackson did not err by omitting Worsham's alleged mental limitations in the RFC.

C. **ALJ VIOLATED 20 C.F.R. §§ 404.1529 AND 416.929 WHEN SHE REJECTED WORSHAM'S STATEMENTS ABOUT PAIN AND SWELLING IN HER LOWER EXTREMITIES.**

Worsham's final contention is that ALJ Jackson erred when she rejected Worsham's statements about the pain and swelling in her lower extremities without properly evaluating such statements in relation to the medical evidence in the record. [DE 13-1, PageID# 749].

12

SSR 16-3p, 2016 SSR LEXIS 4 governs the evaluation of symptoms in Title II and Title XVI disability claims when determining whether a claimant can return to work. 82 Fed. Reg. at 49,462. A two-step inquiry guides an ALJ's evaluation of a claimant's symptoms. *Id.* at 49,463–64. First, she must determine whether an "underlying medically determinable physical or mental impairment . . . could reasonably be expected to produce an individual's symptoms, such as pain." *Id.* at 49,463. Second, she must examine the "intensity and persistence of those symptoms to determine the extent to which the symptoms limit an individual's ability to perform work-related activities." *Id* . During the second step, the ALJ must "consider *all* the evidence presented," 20 C.F.R. § 404.1529(a), including information about [the claimant's] prior work record, [her] statements about [her] other symptoms, evidence submitted by [her] medical sources, and observations by . . . other persons[.]" *Id.* at § 404.1529(c)(3) (emphasis added). Generally, a reviewing court may only disturb these findings for a "compelling reason." *Sims v. Comm'r of Soc. Sec.*, 406 F. App'x 977, 981 (6th Cir. 2011).

At the first step of the above analysis, ALJ Jackson did not assess any of Worsham's testimony regarding the pain or swelling in her feet and legs, much less whether any of her medically determinable impairments could reasonably be expected to produce such symptoms. With regard to her alleged physical impairments, the ALJ only assessed Worsham's alleged back and hip pain:

> At the hearing, the claimant testified that her worst problem is back pain, and that it gets worse with standing or lifting. She stated that she also has hip pain, and that she can only stand 20 minutes and walk maybe ten minutes, and that she can only lift five pounds comfortably.

13

> However, the medical evidence of record contains little discussion or treatment of these conditions. X-rays of the claimant's hips in September of 2017 identified degenerative changes bilaterally, and an x-ray of the claimant's hips and pelvis in December of 2017 found degenerative changes in the hips and minimal degenerative changes in the lower lumbar spine (Exhibit 5F, pp. 30, 46). Records have also noted that the claimant is morbidly obese, with a body mass index of 53.51 in March of 2019 (Exhibit 4F, p. 1).

[TR at 21]. At the second step of the analysis, the ALJ stated,

> Multiple examinations . . . noted that [Worsham] had a normal gait, normal range of motion, [and] intact sensation . . . . In July of 2018, she was exercising in a pool for 10–30 minutes every day, and in March of 2019, she reported that she walked on a treadmill (Exhibits 5F, pp. 1, 61). She has stated in questionnaires and at a psychological examination that she continues to perform activities consistent with the residual functional capacity, and cares for her personal needs, cooks, drives, shops, cleans, sweeps and mops, pays bills, watches television, and crochets.

[TR at 22].

Although an ALJ can consider all the evidence without directly addressing it in her written decision, *Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 507–08 (6th Cir. 2006) (quoting *Loral Defense Systems-Akron v. N.L.R.B.*, 200 F.3d 436, 453 (6th Cir. 1999)), the decision must make clear that she at least implicitly resolved conflicts in evidence, *Kornecky*, 167 F. App'x at 508. The Sixth Circuit has stated that an ALJ's decision "must include a discussion of 'findings and conclusions, and the reasons or basis therefor, on all the material issues of fact, law, or discretion presented on the record.'" *Reynolds v. Comm'r of Soc. Sec.*, 424 F. App'x 411, 414 (6th Cir. 2011) (quoting 5 U.S.C. § 557(c)(3)(A)). "[T]he measuring stick for an 'adequate discussion' is whether the ALJ's persuasiveness explanation enables the court to undertake a meaningful review of his finding as to whether the particular medical

opinion was supported by substantial evidence." *LaBona v. Kijakazi*, No. CV 5:23-035-DCR, 2023 U.S. Dist. LEXIS 112293, 2023 WL 4274948, at *3 (E.D. Ky. June 29, 2023) (quoting *Terhune*, 2022 U.S. Dist. LEXIS 130309, 2022 WL 2910002, at *3.

Here, this Court cannot conclude that the ALJ resolved (implicitly or explicitly) any conflict between Worsham's testimony and objective medical evidence. The decision does not make clear whether the ALJ determined whether Worsham's alleged symptoms of lower extremity pain and swelling could be reasonably caused by her medically determinable conditions. Even if "medical signs and laboratory findings do not substantiate any medically determinable impairment capable of producing the [claimant's] alleged symptoms," the regulations only provide that further analysis should be omitted from step-two of the analysis. 81 Fed. Reg. at 14,166, 14,168. Ostensibly, the ALJ did not address the severity of her symptoms regarding her complaints about lower extremity pain or swelling. As a result, the ALJ did not consider whether the medical evidence was consistent with Worsham's testimony.

The Commissioner argues that the ALJ's decision should be left undisturbed because there is little to no corroborating evidence for her assertions. However, social security regulations explicitly provide that the Commissioner "will not reject [a claimant's] statements about the intensity and persistence of [his or her pain] pain or other symptoms or about the effect [those] symptoms have on [his or her] ability to work solely because the available objective medical evidence does not substantiate [such] statements." § 404.1529(c)(1). Here, it is not clear from the ALJ's decision that

15

she considered, even impliedly, Worsham's alleged symptoms and the objective medical evidence supporting or contradicting the purported severity of such symptoms.

The Court will not uphold that decision when the Commissioner failed to apply proper legal standards unless the legal error was harmless. *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2006). Here, the deficiencies of the ALJ's analysis are not harmless error. A full and proper review of Worsham's statements regarding lower extremity pain and swelling and the related objective medical evidence could have informed the ALJ's RFC analysis. If the ALJ determined her alleged symptoms imposed additional limitations, the ALJ could have reached a different decision regarding Worsham's ability to perform light work. Critically, the VE testified a hypothetical individual with Worsham's background did not acquire skills that would allow her to perform sedentary work, which could leave no other substantial gainful employment in the economy for an individual unable to perform light work.

Based on the forgoing, remand is appropriate so that the ALJ can fully assess whether the intensity and severity of Worsham's alleged symptoms are inconsistent with the other evidence in the record, specifically Worsham's alleged swelling in her lower extremities and the objective medical evidence that supports or contradicts Worsham's testimony.

### IV. <u>CONCLUSION</u>

For the reasons stated herein, **IT IS ORDERED** that:

1. The above-styled action is **REMANDED** to the Commissioner for further proceedings so the ALJ may fully articulate the following in compliance with all applicable Social Security regulations:

   a. Whether Worsham's alleged lower extremity swelling could be reasonably caused by a medically determinable impairment and, if applicable, whether the evidence in the record supports or contradicts the purported intensity and severity of such symptoms.

2. Defendant's Motion for Summary Judgment is **DENIED** without prejudice; and

3. Plaintiff's Motion for Summary Judgment is **GRANTED** insofar as the matter is remanded for further proceedings consistent with this Memorandum and Opinion.

Entered this 28th of August, 2023.



MATTHEW A. STINNETT
UNITED STATES MAGISTRATE JUDGE
EASTERN DISTRICT OF KENTUCKY